574 S.E.2d 228

FOC LAWSHE LIMITED PARTNERSHIP, FOC Pee Dee Limited Partnership, and FOC Downtown Limited Partnership, by Fisher Opportunity Corporation, Its General Partner, Appellants/Respondents,

v.

INTERNATIONAL PAPER COMPANY, Respondent/Appellant.

No. 3580.

Court of Appeals of South Carolina.

Heard Oct. 10, 2002.

Decided Dec. 16, 2002.

Rehearing Denied March 20, 2003.

E. LeRoy Nettles, Sr. and Marian D. Nettles, of Lake City; for appellants-respondents.

Robert L. Widener, of Columbia, and William W. Doar, Jr., of Georgetown; for respondent-appellant.

HEARN, C.J.

FOC Lawshe Limited Partnership, et al, (collectively FOC Lawshe), brought suit seeking injunctive relief and damages against International Paper Company. FOC Lawshe appeals the trial judge's denial of its motion for temporary injunctive relief. International Paper appeals the denial of its motion to dismiss pursuant to Rule 12(b)(6), SCRCP. We affirm the denial of both motions.

## FACTS

FOC Lawshe is the owner of a plantation consisting of approximately 841 acres. The Black River bounds FOC Lawshe's land to the north. International Paper owns large tracts of land, which surround FOC Lawshe's land to the east, south, and west. FOC Lawshe purchased its land primarily for the purpose of hunting deer and quail. FOC Lawshe invested time and money to improve the land to be used for hunting and to stock the property with wildlife. International Paper primarily utilizes its land for growing timber for use in its paper products. However, International Paper leases its property to several hunt clubs to use for hunting deer. During hunting season, the hunt clubs commonly hunt deer on Wednesdays and Saturdays, the same days that FOC Lawshe hunts deer and quail on its plantation.

The hunt clubs that lease the land from International Paper utilize dogs while they are hunting. The dogs are released to chase deer in the direction of the waiting hunters. FOC Lawshe's hunters are "still" hunters, meaning they set out corn, climb deer stands, and wait for a passing deer. The dogs released by the hunt clubs frequently cross over from International Paper's lands onto FOC Lawshe's property and disrupt the hunting by FOC Lawshe's members and guests. Deer and other wildlife are chased off FOC Lawshe's property toward the hunt clubs on International Paper's land. The

dogs have also raided quail pens on FOC Lawshe's property, destroying the pens and the animals.

FOC Lawshe attempted to settle the dispute with the hunt clubs without success. When members of FOC Lawshe contacted individuals at International Paper, they were told that buffer areas were established between the adjoining lands and that the problem would be corrected. However, the use of dogs continued, and the buffer zones proved ineffective. Ruskin Dowdy, an employee of International Paper, told the members of FOC Lawshe the trespassing dogs may be coming from other groups and not the hunt clubs. However, FOC Lawshe's members collected the collars of nine dogs they found on their property, and believe the collars were from dogs owned by members of the hunt clubs that lease International Paper's land.

FOC Lawshe brought suit against International Paper seeking a temporary restraining order and damages. FOC Lawshe based its claim on a theory of nuisance arising from the disruption caused by the trespassing dogs. Neither the hunt clubs nor their members were named as defendants in the action. FOC Lawshe moved for the temporary restraining order when it filed its complaint. International Paper moved to dismiss the action for failing to state a cause of action pursuant to Rule 12(b)(6), SCRCP, and for failing to join a necessary party under Rule 19, SCRCP.

The trial court found FOC Lawshe failed to establish the requirements necessary for issuing a temporary restraining order, and denied its motion. In a separate order, the trial court found the complaint stated a cause of action in nuisance against International Paper and that all necessary parties were joined in the action. Accordingly, the court denied International Paper's motions to dismiss the case.

## STANDARD OF REVIEW

### A. Motion to Dismiss

A trial judge may dismiss a claim when the defendant demonstrates the plaintiff's "failure to state facts sufficient to constitute a cause of action" in the pleadings filed with the court. Rule 12(b)(6), SCRCP. "The trial court must

dispose of a motion for failure to state a cause of action based solely upon the allegations set forth on the face of the complaint." *Brown v. Leverette*, 291 S.C. 364, 366, 353 S.E.2d 697, 698 (1987). "The motion cannot be sustained if facts alleged in the complaint and inferences reasonably deducible therefrom would entitle plaintiff to any relief on any theory of the case." *Id.* All properly pleaded factual allegations are deemed admitted for the purposes of considering a motion for judgment on the pleadings. *Russell v. Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991).

### B. Temporary Injunction

The decision to grant or deny temporary injunctive relief is within the sound discretion of the trial judge and will not be overturned absent an abuse of discretion. *City of Columbia v. Pic-A-Flick Video, Inc.*, 340 S.C. 278, 282, 531 S.E.2d 518, 520 (2000). An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 601, 553 S.E.2d 110, 121 (2001). "The sole purpose of a temporary injunction is to preserve the status quo and thus avoid possible irreparable injury to a party pending litigation." *Id.*

### LAW/ANALYSIS

### A. Motion to Dismiss

International Paper contends the trial court erred in denying its motion to dismiss pursuant to Rule 12(b)(6), SCRCP.[1] We disagree.

"The traditional concept of a nuisance requires a landowner to demonstrate that the defendant unreasonably interfered with his ownership or possession of the land." *Silvester v. Spring Valley Country Club*, 344 S.C. 280, 286, 543 S.E.2d 563, 566 (Ct.App.2001). Nuisance is a substantial and unreasonable interference with the plaintiff's use and enjoy-

---

1. We note the denial of a motion to dismiss pursuant to Rule 12(b)(6) is generally not immediately appealable. However, an order that is not directly appealable can be considered if there is an appealable issue before the court. *See Cox v. Woodmen of World Ins. Co.*, 347 S.C. 460, 469, 556 S.E.2d 397, 402 (Ct.App.2001).

ment of his land. *Id.* "Nuisance law is based on the premise that '[e]very citizen holds his property subject to the implied obligation that he will use it in such a way as not to prevent others from enjoying the use of their property.' " *Clark v. Greenville County,* 313 S.C. 205, 209, 437 S.E.2d 117, 119 (1993) (citations omitted). In South Carolina, a landlord cannot be held liable for a nuisance arising from the use of his land when the landlord has *no control* over the property at the time of the alleged nuisance. *See id.* at 210, 437 S.E.2d at 119. Conversely, if the landowner maintains *complete control* of the leased property, he may be liable for the nuisance created by the use of the land. *See Peden v. Furman University,* 155 S.C. 1, 19, 151 S.E. 907, 913 (1930).

In *Peden,* Furman University leased its baseball field to the Greenville Baseball Association. Frequently, baseballs were batted over the fence surrounding the ball field onto other landowners' property. When a neighboring landowner sued, the University claimed it had no control over the ball field and, therefore, could not be held liable for any nuisance caused by its use. *Id.* The supreme court found the University had "complete control" of the property under terms of the lease, and concluded the University could be held liable. *Id.* Furthermore, the court stated, "In order to charge the landlord, the nuisance must necessarily result from the ordinary use of the premises by the tenant, or for the purpose for which they were let. . . ." *Id.*

 International Paper argues it cannot be liable for a nuisance arising from its tenants' use of the land in light of recent South Carolina decisions that hold landlords are not liable for the actions of dogs belonging to their tenants, even in cases where the landlord knew of the danger of a foreseeable harm. *See Mitchell v. Bazzle,* 304 S.C. 402, 404 S.E.2d 910 (Ct.App.1991). In *Mitchell,* this court found that even though the landlord knew of the dog's viciousness, had adequate time to terminate the tenant's lease, and failed to terminate the tenant's lease, the landlord was not liable for the acts of the tenant's dog, over which the landlord had no control. *Id.,* at 405, 404 S.E.2d at 911–12. Also, in *Fair v. United States,* 334 S.C. 321, 513 S.E.2d 616 (1999), the supreme court held a landlord was not liable to a tenant's invitee for harm caused by the tenant's dog. International Paper

argues that if a landowner cannot be held liable for damages based on the facts in these cases, it would be inappropriate to hold the landowner responsible for the actions of its tenants' dogs in the instant action.

■ Because *Mitchell* and *Fair* were actions in tort based on negligence and premises liability, we find these cases are inapplicable. FOC Lawshe's cause of action is based on nuisance. Negligence is not an element of nuisance, and an action for nuisance may lie even though there has been no negligence on the part of the landlord. *See Peden,* 155 S.C. at 17–18, 151 S.E. at 912 (stating a landlord can be found liable for a nuisance even though he may have exercised reasonable care). Moreover, the mere fact that dogs are the relevant subjects of the alleged nuisance does not in itself place the action in any particular category of cases. We see no rationale for distinguishing a nuisance caused by dogs from a nuisance caused by baseballs where both enter upon a neighbor's land disrupting the use and enjoyment of the property. Accordingly, *Peden* is controlling. Under *Peden,* the appropriate analysis is whether International Paper had complete control over the land and whether the alleged nuisance necessarily results from the ordinary use of the lands by International Paper's tenants or for the purpose for which the lands were let. 155 S.C. at 19, 151 S.E. at 913. Applying *Peden,* we find FOC Lawshe alleged sufficient facts to state a cause of action against International Paper.

In its complaint, FOC Lawshe alleges that despite the leases to the hunt clubs, International Paper reserved the right to and does control the premises and the activities on the land. The complaint alleges that International Paper allows the use of its lands for the type of deer hunting which uses dogs to drive the deer. Moreover, the complaint alleges the dogs used by the hunt clubs will continue to trespass onto FOC Lawshe's lands. FOC Lawshe alleges this continuing trespass prevents it from using its property for the purpose for which it was purchased.

■ In reviewing a motion to dismiss pursuant to Rule 12(b)(6), we look only to the pleadings to determine whether sufficient facts are alleged to establish a cause of action. *See Brown,* 291 S.C. at 366, 353 S.E.2d at 698. In viewing the face

of the complaint, we find the allegation that International Paper retained control over the property and activities thereon sufficiently satisfies the control element of *Peden.* 155 S.C. at 19, 151 S.E. at 913. Moreover, the allegation that International Paper permits the use of its lands for the type of deer hunting utilizing dogs and that the dogs will continue to enter onto FOC Lawshe's land satisfies the requirement that the nuisance must necessarily result from the ordinary use of the premises by the tenant, or for the purpose for which they were let. *Id.* Accordingly, we find the trial judge was correct in denying International Paper's motion to dismiss pursuant to Rule 12(b)(6).

## B. Temporary Injunction

FOC Lawshe asserts the trial court erred in denying its motion for a temporary injunction prohibiting International Paper from allowing the use of dogs for hunting on its land. We disagree.

A plaintiff's entitlement to an injunction requires the complaint to allege facts sufficient to constitute a cause of action for an injunction while establishing that an injunction is reasonably necessary to protect the legal rights of the plaintiff during the litigation. *Transcontinental Gas Pipe Line Corp. v. Porter,* 252 S.C. 478, 480–81, 167 S.E.2d 313, 315 (1969). Generally, to obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and an inadequate remedy at law. *Roach v. Combined Util. Comm'n,* 290 S.C. 437, 442, 351 S.E.2d 168, 170 (Ct.App.1986).

While the harm caused by the dogs invading FOC Lawshe's property is likely to continue, we believe the trial judge did not abuse his discretion in refusing to grant the temporary injunction. A requisite level of control must be shown in order to find an owner liable for the actions of a lessee who causes a nuisance to an adjoining property owner. *Peden,* 155 S.C. at 19, 151 S.E. at 912. In *Peden,* the lease provided that the landowner maintained control of the maintenance of the baseball park. Moreover, the court found the lease gave the landowner control over the height of the fence, and the landowner could have taken several steps to prevent baseballs from traveling into the neighboring property. *Id.*

Looking beyond the face of the complaint, we find conflicting evidence in the record concerning whether International Paper maintained complete control over the activities taking place on its lands. FOC Lawshe alleges that International Paper maintained control over its lands and the activities thereon. In support of this allegation, the record indicates that International Paper created buffer zones between its lands and FOC Lawshe's lands in an attempt to limit the trespassing by the dogs. However, FOC Lawshe's own affidavits, as well as one submitted by International Paper, suggest International Paper may not have control over its lessees' hunting activities. The affidavit by Steven Fisher, president of FOC Lawshe, states:

> I am informed and believe that [International Paper] has agreed with the Sand Hill Hunting Club and the Pine Island Hunting Club to allow each club to have the right to hunt deer on certain areas, assigned to each club, on the lands owned by it. *Except for the permitted hunting thereon,* I am informed and believe that [International Paper] retains the right to and does control the premises and activities thereon.

(emphasis added).

*Peden* requires a finding of complete control before the landlord may be held liable. At this point in the action, the issue of complete control remains unadjudicated. *See County of Richland v. Simpkins,* 348 S.C. 664, 670, 560 S.E.2d 902, 905 (Ct.App.2002). Whether International Paper retained complete control over its lands is a question of fact, and it is for the finder of fact to weigh the conflicting evidence in the record. The fact finder must first decide whether International Paper retained complete control before the court can justify imposing an injunction prohibiting the use of hunting dogs on International Paper's property. Because the issue of control has not been adjudicated, no injunction is needed, at this time, to preserve the status quo. *Id.* at 671, 560 S.E.2d at 906 (finding the operation of an alleged sexually oriented business could not be enjoined without first adjudicating whether the business had actually violated an ordinance because to do so would not preserve the parties' positions pending a decision on the merits). Because there is conflicting evidence in the record, the trial court did not abuse its discretion in denying

FOC Lawshe's motion for a temporary injunction. *Zabinski*, 346 S.C. at 601, 553 S.E.2d at 121.

## CONCLUSION

We find the trial judge correctly denied International Paper's motion to dismiss pursuant to Rule 12(b)(6), SCRCP. The complaint alleges facts sufficient to support a cause of action in nuisance. Additionally, we find the trial judge did not abuse his discretion in denying FOC Lawshe's motion for a temporary injunction. Accordingly, the decisions of the trial judge are

**AFFIRMED.**

GOOLSBY and HOWARD, JJ., concur.